UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jennifer Wright,<br><br>Plaintiff,<br><br>vs.<br><br>Frank Bisignano, Commissioner of Social Security Administration,<br><br>Defendant. | ) | C/A No. 5:26-414-JDA-KDW<br><br><br><br>REPORT AND RECOMMENDATION |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded.

I. Relevant Background

A. Procedural History

On February 8, 2022, Plaintiff protectively applied for DIB and SSI under Title II and Title XVI of the Act. Tr. 228-42. She alleged a disability onset date of August 23, 2021. Tr. 228. Plaintiff's applications were denied initially, Tr. 46, 61, and upon reconsideration, Tr. 62-63. On October 4, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 122-23. The administrative hearing was held on March 19, 2025, before ALJ Carl Watson. Tr. 31-45. On April 10, 2025, the ALJ issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 14-25. Plaintiff requested review of the ALJ's decision on April 25,

2025. Tr. 205-06. On December 4, 2025, the Appeals Council denied Plaintiff's request for review, making the ALJ's April 2025 decision the final decision of the Commissioner. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on February 4, 2026. ECF No. 1.

B. Plaintiff's Background

Plaintiff was born in September 1965, and just shy of her 56th birthday as of her alleged onset date of August 23, 2021. Tr. 290. In her February 24, 2022 form Disability Report-Adult, Plaintiff indicated that she completed the twelfth grade, did not receive special education, and had not completed any type of specialized job training, trade or vocational school. Tr. 285. She noted she had only one job in the last 15 years before becoming unable to work and indicated she worked as a supervisor at Reflections Services from August 2008 until August 2021. *Id.* Plaintiff indicated that she stopped working on August 23, 2021, because of her conditions which she listed as diabetes, hypertension, GERD/reflux disease, congestive heart failure, and cholesterol. Tr. 284. Plaintiff indicated that she is 5' tall, weighed 144 pounds, and her conditions caused her pain or other symptoms. *Id.*

C. The Administrative Proceedings

Plaintiff appeared, along with her attorney, for her administrative hearing on March 19, 2025, in Charleston, South Carolina. Tr. 31. Vocational Expert Jennifer Guediri also appeared and testified. *Id.* The claimant appeared by telephone. Tr. 33.

1. Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed her current age of 59 and stated she had a high school education. Tr. 35. Plaintiff confirmed that she was working, but she previously had stopped working on August 23, 2021. *Id.* Plaintiff testified that she had been doing residential and commercial housekeeping work for 13 years, and she was currently employed

doing housekeeping work. Tr. 36. Plaintiff's counsel noted that Plaintiff re-entered the workforce in March 2023 working part-time and she gradually increased to full-time work in April 2024 while getting medical treatment with a cardiologist. Tr. 36-37. Plaintiff confirmed that the only work she had been doing in the past five years was as a housekeeper. Tr. 37. Plaintiff stated that she does not have to lift anything and she does not use vacuum cleaners because she works in a nursing home and they use a mop and broom. *Id.* She stated that the bucket is on a cart, and that any trash is from a small trash can. Tr. 38. Plaintiff testified that she is lifting more than 20 pounds but not as much as 50 pounds; she may lift boxes that "weigh about five pounds." *Id.* Plaintiff confirmed that she is on her feet throughout the workday. *Id.*

Plaintiff's attorney noted that Plaintiff was seeking disability for a closed period from August 23, 2021, to April 17, 2024, and asked Plaintiff to limit her answers to that period. Tr. 39. In response to questions from her attorney, Plaintiff stated that she "was out of work from '21 to '23." *Id.* She stated that when she first got sick in 2021, she was out of work for a year before she got strong enough to return to work. *Id.* Plaintiff testified that her legs would swell, sometimes she could barely walk, and she would have to sit down to catch her breath. Tr. 40. Plaintiff stated that after she was diagnosed with congestive heart failure and started on medications it took about three-to-four months before her health started to improve. *Id.* She stated that by then it was winter and she could not return to work because she did short-term work from summer until Labor Day. *Id.* Plaintiff testified that she had no side effects from the medication. *Id.*

2. VE's Testimony

The VE described Plaintiff's past work as housekeeper, Dictionary of Occupational Titles ("DOT") number 321.137-010, light, skilled, SVP six, and actually performed at the medium exertional level. Tr. 41. She described Plaintiff's current position at the nursing home as

housekeeping cleaner, DOT 323.687-014, light, unskilled, SVP two, and after clarification from Plaintiff that she lifted from 10 to 20 pounds, performed at light. Tr. 42.

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and vocational background who can perform light work but cannot climb ladders, ropes, or scaffolds, and can occasionally reach overhead with the left arm, and must avoid working at unprotected heights. Tr. 42. The ALJ asked if Plaintiff's past work would be available, and the VE testified that it would be available as typically performed in the national economy but not as actually performed. Tr. 42-43. The VE testified that the current job of housekeeper cleaner would be available both as typically performed in the national economy and as actually performed. Tr. 43. The ALJ asked if the limitation of occasional overhead reaching with the left arm would have conflicts with the two jobs. *Id.* The VE testified that the DOT does not specify which direction or hand is being used for reaching, but in her experience the job could still be performed with occasional overhead reaching of the non-dominant arm. *Id.* The ALJ noted that with Plaintiff's age, if he asked about jobs at the sedentary level, Plaintiff would "grid out" so he would not ask those questions. *Id.* When asked about her approach to estimating job numbers and identifying her sources, the VE testified that she uses the U.S. Department of Labor as her main source of data. Tr. 43-44. The VE testified that in addition to the DOT and Selected Characteristics of Occupations, she also uses the Occupational Outlook Handbook and the Occupational Employment and Wage Statistics data from the Bureau of Labor and Statistics. Tr. 44. The VE further stated that her general approach "relies on the OEWS and employment by industry data from the Bureau of Labor and Statistics and 20 years' professional experience and training in the field." *Id.*

Plaintiff's counsel asked the VE what is the "industry allowance for off-task and absenteeism?" Tr. 44. The VE responded that "typically off task of ten percent or more would not

be permitted in unskilled work, and that would go up to 15 percent as a cutoff in semi-skilled and skilled work. As far as absence[s], typically missing one day a month from work on a consistent basis would not be tolerated." *Id.* Counsel had no further questions for the VE. *Id.*

In a closing statement, Plaintiff's counsel argued that the record evidence of congestive heart failure and associated symptoms would reasonably support a sedentary exertional level. Tr. 44. With nothing further, the hearing closed. Tr. 45.

## II. Discussion

### A. The ALJ's Findings

In his April 10, 2025 Decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2027.
>
> 2. The claimant engaged in substantial gainful activity during the following periods: April 17, 2024, to present (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. The claimant has the following severe impairments: obesity, hypertension, congestive heart failure and left shoulder arthritis/adhesive capsulitis (20 CFR 404.1520(c) and 416.920(c)).
>
> 5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes, or scaffolds. She can occasionally reach overhead with the non-dominant left arm, and she must avoid working at unprotected heights.

7. The claimant is capable of performing past relevant work as a housekeeper, (DOT #321.137-10, light, SVP 6, performed at medium, per the claimant's testimony) and housekeeper/cleaner, (DOT #323.687-014, light, SVP 2). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

8. The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2021, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Tr. 19-20, 22, 24-25.

B. Legal Framework

1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R.

("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if the claimant can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to

---

part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. §§ 404.1525, 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the

Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C. Analysis

Plaintiff argues that the ALJ's determination is unsupported by substantial evidence as he failed to properly consider the opinion evidence. Pl.'s Br. 11, ECF No. 14. The Commissioner contends that the ALJ's evaluation of the physician's opinion comports with controlling regulations and caselaw. Def.'s Br. 5, ECF No. 16.

1. Standard of Review

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[2] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the

[2] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c), 416.920b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. §§ 404.1520b(c)(3), 416.920b(c)(3).

2. Dr. F. Carl Derrick's Opinion[3]

On September 19, 2022, Dr. Derrick issued a Medical Source Statement: Remaining Ability to Do Physical Activities. Tr. 738-41. In it he noted that he was treating Plaintiff for high blood pressure and heart failure. Tr. 738. He indicated that Plaintiff had no problems sitting or maintaining a seated position, and she could sit for two hours out of an eight-hour day. *Id.* Dr. Derrick noted that if Plaintiff had issues maintaining a seated position, it would be medically necessary for her to elevate her legs above waist level to remain seated and productive for more than one hour at a time. *Id.* Dr. Derrick did not provide an explanation for his finding. *Id.* He indicated Plaintiff had no difficulties standing and walking, did not need an assistive device, but if he found that she had issues with standing and walking she could stand and walk for 16-30 minutes at one time without the use of an assistive device. *Id.* He also indicated that if Plaintiff had any issues with standing and walking, she reasonably could be expected to stand/walk for two-to-three hours out of an eight-hour workday. *Id.* Dr. Derrick indicated, without explanation, that Plaintiff's

[3] Dr. Derrick completed two opinion questionnaires related to Plaintiff on the same date. One questionnaire was a Medical Source Statement: Remaining Ability to Do Physical Activities, Tr. 738-41, and the other was a Mental Capacity Assessment, Tr. 743-47. Plaintiff contests the ALJ's consideration of the opinion related to Plaintiff's ability to perform physical activities.

limitations with standing/walking interfere seriously with her "ability to independently initiate, sustain, and complete their activities." Tr. 739. He indicated that Plaintiff could safely lift/carry one-to-five pounds for one-third or two-thirds of an eight-hour workday. *Id.* He indicated that Plaintiff had issues with using her left arm for reaching, and she could productively use her arms for reaching, pushing or pulling three-to-four hours out of an eight-hour workday. *Id.* He indicated Plaintiff had no limitations with the use of her hands. *Id.* As to manipulative abilities, he indicated that turning/twisting abilities would be impacted/limited. Tr. 740. He indicated that if Plaintiff had limitations, she would be able to productively use her hands one-to-two hours out of an eight-hour day. *Id.* Dr. Derrick indicated that fatigue, exhaustion, or weakness would impact Plaintiff's ability to function physically, and her symptoms were moderate, meaning "difficulties or interference in concentration, persistence, or pace up to 1/3 of an 8-hour time span such that they would not be productive during that time period." *Id.* Dr. Derrick noted that he had been treating Plaintiff since December 23, 2021, and his opinion was based on his direct observation/treatment, Plaintiff's report, and historical medical records. Tr. 741.

3. The ALJ's Consideration of the Opinions

The ALJ evaluated the two opinions of Dr. Derrick and found that the assessment finding Plaintiff had a mild mental limitation was not persuasive and not supported by the medical evidence of record or presentation on examination. Tr. 24. As to the Medical Source Statement: Remaining Ability to Do Physical Activities, the ALJ noted:

> Similarly, Dr. Derrick['s] opinion at exhibit 10F where he assessed the claimant with a moderate mental limitation is not persuasive for the reasons noted above. Further, Dr. Derrick opined that the claimant would be limited to performing work at the sedentary level is inconsistent with the medical evidence. The claimant's ejection fraction had improved to 65% and no longer had left ventricle thrombus. Overall, the mobility in the left upper extremity was improving with respect to functional activities of daily living when using the left arm. (Exhibit 7F and 8F)

*Id.*

4. Discussion

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In undertaking review of the ALJ's treatment of a claimant's medical sources, the court focuses its review on whether the ALJ's decision is supported by substantial evidence. Under the new regulations, when discussing the persuasiveness of an opinion, the ALJ need only explain how he considered "the most important factors" of supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining supportability as "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation"). Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Revisions to Rules*, 82 Fed. Reg. at 5853 (defining consistency as "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim").

The undersigned agrees with the Plaintiff that the ALJ's explanation for his consideration of the supportability and consistency factors falls short. Citing the agency's articulation standard as set forth in the Federal Register, the Commissioner notes:

> As the agency has explained, "[w]e consider all evidence we receive, but we have a reasonable articulation standard for determinations and decisions that does not require written analysis about how we considered each piece of evidence," and "[w]e expect that the articulation path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review our final decision." 82 F.R. 5844-01, at 5858.

Def.'s Br. 5-6. The Commissioner contends that "the Court can trace the ALJ's rationale for finding [Dr. Derrick's opinions] not persuasive, and substantial evidence supports his fact-finding." Def.'s Br. 6. Unfortunately, here *the ALJ's analysis* does not permit the court to do so.

While the Commissioner asserts that the ALJ's residual functional capacity ("RFC") discussion of Plaintiff's testimony, medical records, and activities of daily living provide an explanation for the ALJ's consideration of Dr. Derrick's opinion, the undersigned disagrees. The ALJ does not refer to Dr. Derrick in his discussion of the medical evidence and cites only two exhibits specifically in his discussion of Dr. Derrick's opinion. Those two records, Exhibit 7F and 8F, consist of roughly 150 pages of Physical/Occupational Therapy Records from May 1, 2022, to July 27, 2022. Tr. 556-613, 621-712. As noted by Plaintiff, the ALJ cites these exhibits in their entirety and "those records show great consistency with Dr. Derrick's opinion." Pl.'s Br. 14. If the ALJ intended to reference the evidence he cited in his RFC discussion to support his findings regarding Dr. Derrick's opinion he failed to do so. *See Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ.").

The undersigned cannot find that the ALJ's decision is supported by substantial evidence and recommends remand because "the analysis is incomplete and precludes meaningful review." *Monroe v. Colvin*, 826 F.3d 176, 191 (4th Cir. 2016); *see also Arakas v. Comm'r Soc. Sec. Admin.*, 983 F.3d 82, 95–99 (4th Cir. 2020) (indicating ALJs must provide "'an accurate and logical bridge' from the evidence to their conclusions"). On remand the ALJ should provide further analysis of Dr. Derrick's opinion regarding Plaintiff's physical capabilities during the closed period.

III. Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding was supported by substantial evidence. Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further consideration.

IT IS SO RECOMMENDED.

October 22, 2026
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**